JUDGE CASTEL

08 CV 6004

*JAMES A. SAVILLE, JR.*
*KIPP C. LELAND*
**HILL RIVKINS & HAYDEN LLP**
Attorneys for Plaintiff

45 Broadway – Suite 1500
New York, New York 10006
(212) 669-0600

*UNITED STATES DISTRICT COURT*
*SOUTHERN DISTRICT OF NEW YORK*

| | |
|---|---|
| SHANGHAI HU RUI INDUSTRIES CO. LTD.; | Index No.: |
| Plaintiff, | **08 CV ______ ( )** |
| **- Against -** | |
| HO FENG MARITIME CO., S.A. and HO MAO MARITIME CO., S.A.; | |
| Defendants. | **VERIFIED COMPLAINT** |

Plaintiff, Shanghai Hu Rui Industries Co. Ltd., by and through its attorneys, Hill Rivkins & Hayden LLP, as and for its Verified Complaint against the above-named defendants alleges upon information and belief as follows:

**JURISDICTION**

1. This is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and this Court has jurisdiction pursuant to 28 U.S.C. §1333 in that plaintiff's claim against defendant arises out of the breach of a maritime contract.

## THE PARTIES

2. At and during all material times hereinafter mentioned, plaintiff ("Shanghai") was and now is a corporation existing by virtue of foreign law with an address and place of business at RMJ, 20F, Huamin Empire Plaza Business Centre, No. 726, Yan'an West Road, Shanghai, China, and was the owner of the shipment set forth herein. Shanghai purchased the subject shipment from Hua Tyan Development Limited, who had purchased the subject shipment from Kayuneka Sdn Bhd.

3. At and during all material times hereinafter mentioned, defendant Ho Feng Maritime Co., S.A. ("Ho Feng") was and now is a corporation existing by virtue of foreign law with an address and place of business at 7th Floor, No. 642, Boai, 2nd Road, Kaohsiung, 81358, Taiwan and owned, managed, and/or chartered out the M/V Ho Feng No. 7.

4. At and during all material times hereinafter mentioned, defendant Ho Mao Maritime Co., S.A. ("Ho Mao") was and now is a corporation existing by virtue of foreign law with an address and place of business at 7th Floor, No. 642, Boai, 2nd Road, Kaohsiung, 81358, Taiwan and owned the M/V Ho Feng No. 7.

5. This action is brought to obtain jurisdiction over the defendants and to obtain security for any judgment that is eventually entered against the defendants.

**AS AND FOR A CAUSE OF ACTION**
**AGAINST DEFENDANTS HO FENG AND HO MAO**

6. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 5 as if set forth herein at length.

7. On or about October 26, 2007 there was delivered to defendants Ho Feng and Ho Mao in good order and condition a shipment of 1,894 Malaysian Round Logs suitable in every respect for the intended transport. Defendant Ho Feng issued bill of lading KNK/1/08 pursuant to which defendants undertook to transport the subject shipment from Malaysia to China aboard the M/V Ho Feng No. 7 for certain consideration. A true and accurate copy of the bill of lading is attached hereto as Exhibit 1. As a shipment between Malaysia and China, foreign law may govern the liability of said defendants.

8. The M/V Ho Feng No. 7 never arrived at its discharge port, and was reported to be sunk, and the subject shipment was never delivered.

9. By reason of the premises defendants were negligent and careless in the handling of plaintiff's cargo, breached their duties and obligations as common carriers and bailees of the cargo, were negligent in their management of the vessel, and were otherwise at fault.

10. Plaintiff was the shipper, consignee or owner of said shipment and brings this action on its own behalf and, as agent and trustee, on behalf of and for the interest of all parties

who may be or become interested in the said shipment, as their respective interests may ultimately appear, and plaintiff is entitled to maintain this action.

11. Plaintiff has duly performed all duties and obligations on its part to be performed.

12. By reason of the premises, Plaintiff has sustained damages, and will otherwise incur costs, as nearly as same can now be estimated, no part of which has been paid, although duly demanded, in the total amount of $1,681,007.34.

13. After investigation, defendants Ho Feng and Ho Mao cannot be "found" in this District for purposes of and as delineated in Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure. Plaintiff is informed that defendants have, or will shortly have, assets within this District, including but not limited to, cash, funds, escrow funds, credits, wire transfer, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and sub-charter hire, at or being transferred and/or wired to, from or through JPMorgan Chase Bank, Citibank N.A.; American Express Bank, Ltd; Bank of America, Bank of New York, Deutsche Bank; HSB; BNP Paribas; Wachovia Bank; ABN Amro; Standard Charted Bank; Bank of Communications; The Bank of East Asia; Bank of China; Shanghai Commercial Bank Ltd.; Bank of India and/or any other garnishee as further investigation may uncover.

**W H E R E F O R E**, plaintiff prays:

1. That process in due form of law according to the practice of this Court may issue against defendants Ho Feng and Ho Mao citing them to appear and answer the foregoing, failing which, a default will be taken against them for the principal amount of the claim, plus interest, costs and attorneys' fees;

2. That if defendants Ho Feng and Ho Mao cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, that all assets of defendants Ho Feng and Ho Mao up to and including **$1,681,007.34** be restrained and attached, including but not limited to cash, funds, escrow funds, credits, wire transfer, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire, sub-charter hire, at or being transferred and/or wired to, from or through JPMorgan Chase Bank; Citibank N.A.; American Express Bank, Ltd; Bank of America; Bank of New York; Deutsche Bank; HSBC; BNP Paribas; Wachovia Bank; ABN Amro; Standard Chartered Bank; Bank of Communications; The Bank of East Asia; Bank of China; Shanghai Commercial Bank Ltd., Bank of India and/or other garnishees upon who a Writ of Maritime Attachment and Garnishment may be served; and

3. And for such other and further relief as this Court may deem just and proper.

**VERIFICATION**

I, Kipp C. Leland, hereby affirm as follows:

1. I am an associate with the firm Hill Rivkins & Hayden LLP, attorneys for plaintiff Shanghai Hu Rui Industries Co. Ltd. I have prepared and read the foregoing Verified Complaint and know the contents thereof and, the same is true to the best of my knowledge, information and belief.

2. The sources of my knowledge, information and belief are documents provided by our clients and our discussions with them.

3. As plaintiff is a foreign corporation with no offices, officers or directors located within the Southern District of New York, this verification is made by me as counsel of record.

I hereby affirm under the penalty of perjury that the foregoing statements are true and correct.

Dated: New York, New York
July 1, 2008

____________________________
Kipp C. Leland

Exhibit 1

B/L No. KNK/1/08

AS CARRIER

HO FENG MARITIME CO. S. A.

## BILL OF LADING

Shipper:
KAYUNEKA SDN.BHD.,(275367-H) WISMA SAMLING,LOT 296,JALAN TEMENGGONG DATUK OYONG LAWAI JAU,98000 MIRI,SARAWAK, MALAYSIA.

Consignee:
TO ORDER

Notify party:
SHANGHAI HU HUI INDUSTRIES CO. LTD., RM3, 20F, HUAMIN EMPIRE PLAZA BUSINESS CENTRE,NO.726, YAN'AN WEST ROAD, SHANGHAI, CHINA.

Local vessel: | From:

Ocean vessel: M.V. HO FENG NO.7 VOY: 7126

Port of loading: KUALA BARAM, MALAYSIAN PORT.

Port of discharge: ZHANGJIAGANG, CHINA.

Final destination (if on-carriage):

Freight payable at:

Number of original B/L: THREE (3)

SHIPPED on board in apparent good order and condition (unless otherwise indicated) the goods or packages specified herein and to be discharged at the mentioned port of discharge or as near thereto as the vessel may safely get and be always afloat.

The weight, measure, marks, numbers, quality, contents and value, being particulars furnished by the Shipper, are not checked by the Carrier on loading.

The Shipper, Consignee and the Holder of this Bill of Lading hereby expressly accept and agree to all printed, written or stamped provisions, exceptions and conditions of this Bill of Lading, including those on the back hereof.

| Marks and numbers | Number and kind of packages; Description of goods | Gross weight, kgs. | Measurement |
|---|---|---|---|
| | MALAYSIAN ROUND LOGS | | |
| MKD, MKE, MKF, MKG, MKH, MKJ, MDH, RVC. | 1894 PIECES ( ONE THOUSAND EIGHT HUNDRED AND NINETY-FOUR ONLY ) | | |
| | SAID TO MEASURE: 7,807.4[illegible] M3 | | |

1st ORIGINAL

ABOVE PARTICULARS DECLARED BY SHIPPER

Freight and Charges:

"FREIGHT PREPAID"

CHG. 702 [illegible]

Freight due [illegible] cargo and/or ship lost or not lost.

Shippers are requested to note particularly the terms and conditions of this Bill of Lading with reference to the validity of the insurance [illegible]

Terms and Conditions as per back hereof.

IN WITNESS whereof the Master or Agents of the vessel has affirmed to the above stated number of Bills of Lading, all of this tenor and date, one of which being accomplished the others to stand void.

Dated at KUALA BARAM ON: 11-01-2008

MASTER OF M.V. HO FENG NO.7
CAPTAIN. JOSEPH C. ANTONIO

M.V. HO FENG MASTER PANAMA

As Carrier

# Terms and Conditions of Shipment mutually agreed:

1. GENERAL IMMUNITIES – The Shipowners, Charterers or their [illegible] robbers, pilfering, piracy, thieves by sea or land [illegible] been committed by [illegible] and from any [illegible] strikes or civil commotions [illegible] and losses by collisions [illegible] other accidents of navigation, even though the damage or loss may be attributable to default, neglect or error in judgment of the pilot, master, mariners, engineers, stevedores or other servants of the Company, nor for damage or [illegible] for decay, putrefaction, rust, vermin, rust, sweat, change of character, shrinkage, leakage, breakage, effects of climate and heat of holds, damage caused by hook-holes, breakdown of loading or discharging gear, weight-bags or packing torn or not torn, risk of craft or transhipment, of docking and storage afloat or ashore country-damage or any damage arising from the nature of the goods shipped or such defective packing as could not be noticed externally, or from contact with or evaporation from other [illegible] product, nor for errors caused by inaccuracy, obliteration or absence of marks, numbers, address or description of goods shipped.

2. SCOPE OF VOYAGE – The scope of voyage [illegible] include usual [illegible] ports in, or out of, the [illegible] in a direction contrary [illegible] of a prior or subsequent voyage. The ship may omit [illegible] more than once; may, either with or without the goods on board, and before or after proceeding toward the port of discharge, adjust compasses, and other [illegible] instruments, dry dock, [illegible] fuel or stores, remain in port, sail without pilots, tow and be towed, and [illegible]

3. MARKS, NUMBERS, ETC – All Goods must be distinctly marked with the marks, Numbers and Port of Destination, otherwise the Carrier will not be responsible for detention, or mis-delivery [illegible] at least [illegible] high and in such a manner as will remain legible until delivery [illegible] In no case will the Carrier accept responsibility for delivery other than the leading marks [illegible] are carried at shipper's risk [illegible]

4. DESCRIPTION OF GOODS – [illegible] in case of [illegible] detention, and all [illegible] by [illegible] by incorrect marking or by incomplete or inaccurate description of contents, weight or of any other particulars required by the Authorities [illegible] Bill of Lading shall be borne by the Owners or Consignees of the goods [illegible] description of contents, weight, measurement [illegible] due is not declared [illegible] the Company to charge double the full freight, which must be paid previous to delivery.

5. SHIPPER'S WEIGHT AND/OR MEASUREMENT – Weight and/or measurement declared by the Shippers in the Bill of Lading is for freight purposes only and such declaration involves no admission by the Carrier as to the correctness thereof.

6. LOADING & DISCHARGING – The goods [illegible] the Carrier until the ship's tackle shall have been [illegible] to have been delivered by the Carrier at the moment when free of ship's tackle. In accepting custody of, and issuing its receipt or this Bill of Lading for, the goods prior to their being taken by, and in retaining custody thereof after they are free of, the ship's tackle, the Carrier acts solely as agent, and for the convenience and accommodation of [illegible] at whose risk [illegible] the goods shall remain up to the moment of being taken by, and from the moment [illegible] the ship's tackle, the Carrier receiving no freight [illegible] responsibilities assumed except from "tackle to tackle." The Carrier's responsibility as such in respect of the goods, and its liability for any loss or damage thereto from whatever cause, is understood and agreed to be limited strictly and in any and all events, to the period from the moment of hooking on of ship's tackle to the goods [illegible] are free of ship's tackle [illegible] the loading of the goods aboard ship unless and until expressly so noted at the port of shipment where the name of the vessel upon which the goods have been loaded and the date of such loading.

7. DELIVERY – Consignees or their assigns must be ready to take delivery of goods as soon as the ship is ready to discharge and as fast as she is able to discharge them at quay, body or [illegible] at the sole discretion of the Carrier or his Agent, and to receive the goods by day and night, Sundays and Holidays, notwithstanding any custom of the port of discharge to the contrary, otherwise the Master or Agents shall be at liberty to land and warehouse the goods or discharge them into a store ship, or hulk, or into lighters, at the merchant's risk and expense. Goods to be received in lots or in part of lots. Goods overcarried to be returned at Ship's expense, but free of liability for any loss, depreciation or damage arising from over-carriage or return carriage.

8. LIEN – The ship shall have an absolute lien upon the goods for all freight until paid, dead freight and charges including fines, damages, expenses and general average claims, for which the goods are liable under this Bill of Lading. Freight and charges are due on shipment in exchange for Bill of Lading and if not paid in due course, even if stated in the Bill of Lading as "prepaid", the same will be charged on the goods at advance rates for payment abroad, and all telegrams and other incidental expenses incurred shall be included in the lien on the goods. If on sale of the goods at destination for freight and for charges the proceeds fail to cover such freight or charges the shippers shall be liable for the difference.

9. TRANSHIPMENT & FORWARDING – Whether expressly arranged beforehand or otherwise, the Carrier shall be at liberty to carry the goods to their port of destination by the said or other vessel or vessels either belonging to the Carrier or others, or by other means of transport, proceeding either directly or indirectly to such ports and to carry the goods or part of them beyond their port of destination, and to tranship [illegible] ashore or afloat and reship and forward the same at Carrier's expense but at shipper's/receiver's risk. When the ultimate destination at which the Carrier may have engaged to deliver the goods [illegible] the Carrier acts as Forwarding Agent only. [illegible] by him on [illegible] any other part of the transport [illegible] the freight for the whole [illegible] The cargo shall be forwarded as soon as practicable but the Carrier [illegible] be liable for any delay.

10. OPTIONAL CARGO – The port of discharge for optional cargo must be declared to the vessel's agents at the first of the optional ports not later than 48 hours before the vessel's arrival there. In the absence of such declaration the Carrier may elect to discharge at the first or any optional port and the contract of carriage shall then be considered as having been fulfilled. Any option shall be for the total quantity of goods under this Bill of Lading.

11. DANGEROUS GOODS – If any goods of an explosive damaging or dangerous nature be shipped without previous declaration and arrangement, or any goods contraband or prohibited by the law of the port of shipment, discharge, or call, such goods, upon discovery, may be thrown overboard or may be discharged at any port, or may be otherwise dealt with according to the [illegible] as well as any consequent loss, penalty or damage [illegible] shall fall upon the shippers, consignees, or owners of the goods.

12. VALUABLES [illegible] to any extent, for any loss of injury or damage to bullion, specie, precious metals, manufactured or unmanufactured plated articles, jewelry, [illegible] for jewelry, precious stones, trinkets, watches, clocks, timepieces, musicals, bills, bank notes of any country, orders, notes or securities for payment of money, stamps, maps, letters, writings, title deeds, paintings, engravings, pictures, [illegible] or otherwise, contained in any package or parcel, whatever may be the value of such articles, unless Bill of Lading in which value and contents are stated and [illegible] therefor and ad valorem freight paid thereon. Any untrue declaration of value of such goods [illegible] that release the Carrier from all responsibilities and shall entitle the Carrier to charge double freight [illegible]

Consignees must take delivery of valuable packages from on board during ship's stay in port [illegible] stored at the risk and expense of the Owners thereof.

13. REFRIGERATED CARGO – Refrigerated cargo shall be stowed in insulated space. The [illegible] to obtain a loading certificate from Lloyd's surveyor or other competent surveyor and it is hereby agreed that the production of such certificate shall be deemed to be conclusive evidence against Charterer, Shipper, Consignee and Endorsee of this Bill of Lading that the carrier has exercised due diligence to make the vessel's engines, machinery, refrigerating machinery, appliances, equipment, spare gear, supplies, insulation, refrigerating and cool chambers and dunnage battens at the time of loading and at the commencement of the voyage in every respect proper, fit, safe, sufficient and seaworthy.

14. DECK CARGO – Deck cargo to be handled and carried on deck and is so carried at the sole risk of the shipper.

15. LIVE STOCK ETC – Live animals, plants and cargoes stated [illegible] on deck and so carried, are subject to the Carriage of Goods by Sea Act 1924 with the exception that the Carrier shall not be liable for [illegible] resulting from any act, neglect or default of his servants in the management of such cargo. Live animals, plants and deck cargo must be [illegible] Otherwise the Carrier to be at liberty to land the same at shipper's risk and expense. In no event [illegible] ship not responsible [illegible]

16. STEEL & IRON – Vessel not responsible for [illegible] incurred at port of discharge consequent upon insufficient [illegible] payable by Consignees unless:

a. Every piece is distinctly and permanently marked with oil paint;
b. Every bundle is securely fastened, distinctly and permanently marked with oil paint and/or metal tagged, so that each piece or bundle can be distinguished at port of discharge.

17. HEAVY [illegible] weight of single pieces or packages exceeding 2 long tons in weight [illegible] and clearly and durably marked [illegible] each such piece or package, at the time of delivery to the Carrier. Such pieces or packages shall be held [illegible] Carrier's [illegible] at time of shipment [illegible] and handling. If the weight [illegible] of package is incorrectly declared or marked thereon [illegible] declared and marked, the shipper, consignee and [illegible] shall be liable for any loss or damage [illegible] by the [illegible] carriage, discharge and handling thereof.

18. DUTY & TAX – Any duty, tax, tariff, charges or imposts, levied on the goods under any name and of whatever nature, by reason of their having transhipped during the voyage, or carried or discharged under quarantine or for any other reason, shall be borne by the owners of the goods.

19. WAR CLAUSE – In the event that threat, existence or continuance of any present or future war or warlike condition or hostilities or civil commotion or the existence or continuance of conditions or cessation or prohibition of intercourse (commercial or otherwise) between nations or measures taken by any Government or Governments which, in the opinion of the Carriers indicate that there is a danger of any of the foregoing which may render impossible performance of its obligations due to the requisition, seizure or loss of any of the Carriers' vessels [illegible] in which the Carriers' sole judgment may directly or indirectly result in the imposition upon the Carriers of any undue financial or other hardship or burden in the performance of its obligations [illegible] increase in rates of freight [illegible] the Carriers reserve the right of forthwith cancelling or suspending any or all of the obligations or granted under this engagement and/or tariff and/or relative contracts and/or booking notes [illegible] for as cargo actually shipped may be concerned, the provisions of the Carriers' Bill of Lading shall apply. This clause shall not affect or supersede any provision in any contract for carriage which entitles the Carriers to cancel such contract in the event of hostilities breaking out or threatening to break out.

20. NEW JASON CLAUSE AND GENERAL AVERAGE – In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Carrier is not responsible, by statute, contract or otherwise, the goods, shippers, consignees or owners of the goods shall contribute with the Carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the goods. If a salvage ship is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving ship or ships belonged to strangers. Such deposit as the Carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the goods, shippers, consignees or owners of the goods to the Carrier before delivery.

Average payable according to York/Antwerp Rules [illegible]

21. BOTH TO BLAME COLLISION CLAUSE – This clause to remain in effect even if unenforceable in the Courts of the United States of America.

If the vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, neglect or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the vessel, the owner of the cargo carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her Owner in so far as such loss or liability represents loss of or damage to or any claim whatsoever of the owner of the said goods paid or payable by the other or non-carrying vessel or her Owner to the owner of said cargo and set-off, recouped or recovered by the other or non-carrying vessel or her Owner as part of his claim against the carrying vessel or Carrier. The foregoing provisions shall also apply where the Owner, operator or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision or contact.

22. BLOCKADE ETC – In case of blockade and interdict [illegible] at the port of discharge, or if the entering of or discharging in the port shall be considered by the master unsafe by reason of war or disturbances, or ice, the master may land the goods at the nearest safe and convenient port, at the expense and risk of the owners of the goods, and the Ship's responsibility shall cease, when the goods are so discharged into proper and safe keeping, the master giving immediate notice of the same to the consignees of the goods, so far as they can be ascertained.

23. LAW TO APPLY – This contract wherever made is to be construed and governed by English Law. This Bill of Lading is subject to the Provisions of the Carriage of Goods by Sea Act 1924.

24. LIMIT OF CLAIM – No claim made under this Bill of Lading will be admitted unless made and properly attested within [illegible] days after the goods have been landed. The Carrier shall in no case be liable for more than [illegible] including freight if prepaid [illegible] in case of [illegible] declared before the time of shipment [illegible] subject to [illegible] 1936 with respect to the goods carried to or from [illegible] the Carrier nor the Shipper shall, in any event, be or become liable for any loss or damage to such goods in an amount exceeding [illegible] in case of goods [illegible] the value of such goods has been declared by the Shippers before shipment [illegible] Bill of Lading.

KAYUHLEKA SDN. BHD. [illegible]